1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

5

6

DAVID RENGO,

7

Plaintiff,

C12-298 TSZ

8

v.

ORDER

9

SHANDY COBANE, et al.,

10

Defendants.

11

THIS MATTER comes before the Court on defendants' motion for summary

12

judgment, docket no. 36.  Having reviewed all papers and videos filed in support of and

13

in opposition to defendants' motion, the Court enters the following order.

14

**Background**

15

On April 24, 2010, plaintiff David Rengo was involved in a brawl outside a dance

16

club in the Belltown area of Seattle.  According to defendant Seattle Police Officer

17

Shandy Cobane, while Officer Cobane was attempting to stop the fight, he was pushed by

18

plaintiff and punched by plaintiff's companion, Chad Jordan.  Jordan fled the scene and

19

Officer Cobane gave chase.  Meanwhile, plaintiff was taken into custody by other

20

Seattle Police Officers and placed into the back of a patrol vehicle operated on that day

21

by Officer Aaron Dalan.  Officer Dalan transported plaintiff from the scene of his arrest

22

to the West Precinct.

23

ORDER - 1

1    Both Jordan and plaintiff were subsequently charged, as co-defendants, by the

2  King County Prosecuting Attorney with Assault in the Third Degree, pursuant to

3  RCW 9A.36.031(1)(g), which defines, as a felony, assault of a law enforcement officer.

4  Jordan eventually pleaded guilty to an amended charge, but the case against plaintiff was

5  dismissed for inadequate investigation pursuant to Washington Criminal Rule 8.3(b),

6  which permits a court to "dismiss any criminal prosecution due to arbitrary action or

7  governmental misconduct."

8    While the criminal charge against him was still pending, plaintiff made statements

9  to the media accusing Officer Cobane of choking him during the course of his arrest.  *See*

10  Compl. at ¶ 3.4 (docket no. 2-1); Ex. B to Response (docket no. 54-3).[1]  Having now

11

12  _____

[1] Defendants move to strike certain materials submitted along with plaintiff's response to the motion for
13  summary judgment, including Exhibit B to the Response, titled "Seattle Cop In Stomping Incident
Accused of Abusing Another Suspect," which appears to be printed from the KIRO television channel
website.  Defendants' motion to strike, docket no. 61, is GRANTED in part and DENIED in part.  The
14  Court has considered Exhibit B to the Response, not for the truth of the matter asserted, but for the dates
and sequence of plaintiff's allegations against Officer Cobane.  The other materials attached to the
15  Response, which defendants seek to strike as lacking the requisite authentication, are generally either
(i) duplicative of documents submitted by defendants in support of their motion for summary judgment,
or (ii) matters of public record, including transcripts of proceedings before the King County Superior
16  Court, documents filed in other court cases, an excerpt from the 2008 Washington Adult Sentencing
Guidelines Manual, and a Report on the Investigation of the Seattle Police Department performed by the
17  United States Department of Justice Civil Rights Division and the Office of the United States Attorney
for the Western District of Washington.  The Court assumes that plaintiff's counsel could obtain the
18  certifications necessary to offer these various public records as evidence, *see* Fed. R. Evid. 902(4), and
the Court has therefore given them their due weight.  In contrast, Exhibit 14 to the Declaration of Peter T.
Connick, docket no. 55-15, which is printed from the KING television channel website and describes the
19  resolution of a lawsuit by a different individual against Officer Cobane, is STRICKEN as inadmissible
hearsay and propensity evidence.  Fed. R. Evid. 404(a) & 802.  Finally, with regard to Exhibit 3 to the
20  Declaration of Jill Sullivan, docket no. 58-3, which consists of a screenshot of a portion of the Seattle
Police Department ("SPD") website, an "In-Car Video Review" by the SPD Office of Professional
Accountability, and a report on SPD's In-Car Video Program by the Office of the Seattle City Auditor,
21  the Court rejects defendants' contention that such materials are hearsay, *see* Fed. R. Evid. 801(d)(2), and
has considered the information in such exhibit to the extent relevant to the issues presented in the pending
22  motion for summary judgment.

23

ORDER - 2

1 reviewed a video recording of his arrest, plaintiff concedes that Officer Cobane was not

2 involved in any choking incident, and he asserts that a different officer engaged in the

3 alleged use of excessive force.  Rengo Decl. at ¶ 6 (docket no. 56).  This other officer,

4 having the assigned number 6275, did not alert the Computer Aided Dispatch system of

5 his participation in plaintiff's arrest, did not write a statement about the incident, and was

6 not listed in any of the related reports.  _See_ Berger Decl. at ¶ 5 & Ex. A (docket no. 62).

7     Plaintiff having steadfastly asserted his claim of choking against Officer Cobane,

8 defendants were not on notice that another officer might have been involved, and the

9 Court rejects plaintiff's contention that defendants and/or their attorneys "deliberately

10 and intentionally concealed" the video of plaintiff's arrest that was recorded by the

11 equipment in the patrol vehicle operated by such other officer.  To date, plaintiff has not

12 pleaded any claim against this other officer, who is of a different race and build than

13 Officer Cobane, having not identified such officer in the Complaint either by name or as

14 "John Doe" or similar designation.

15 **Discussion**

16     Summary judgment shall be granted if no genuine issue of material fact exists and

17 the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In this

18 case, plaintiff has asserted five claims against Officer Cobane and defendant City of

19 Seattle[2]:  (i) violation of 42 U.S.C. § 1983; (ii) negligence in investigating plaintiff's

20 allegations of police brutality and in promulgating procedures for investigations of police

21

22 [2] Former SPD Chief John Diaz was originally named as a defendant, but the claims against him were dismissed by stipulation of the parties.  _See_ Order (docket no. 12).

23

ORDER - 3

1  misconduct; (iii) outrage; (iv) false arrest, false imprisonment, malicious prosecution; and

2  (v) violation of the Washington State Constitution.  As to the last claim, plaintiff

3  concedes that Washington courts do not recognize a cause of action for violation of the

4  Washington State Constitution, <u>see</u> Response at 23 (docket no. 54); <u>see also</u> <u>Blinka v.</u>

5  <u>Wash. State Bar Ass'n</u>, 109 Wn. App. 575, 591, 36 P.3d 1094 (2001), and defendants'

6  motion for summary judgment as to plaintiff's fifth cause of action is GRANTED.

7          1.       **<u>Excessive Force and Outrage</u>**

8          In connection with his § 1983 claim, plaintiff has not explicitly indicated what

9  constitutional right he alleges was violated.  Because plaintiff's factual statements focus

10  on an alleged choking and plaintiff's subsequent arrest, the Court treats plaintiff's

11  complaint as pleading both an excessive force claim and an unlawful seizure claim.  The

12  latter will be addressed in connection with plaintiff's false arrest, false imprisonment, and

13  malicious prosecution claim.

14          With regard to plaintiff's excessive force claim, and the related state law claim of

15  outrage, because plaintiff concedes that Officer Cobane was not involved in any choking

16  incident, defendants' motion for summary judgment as to plaintiff's first and third causes

17  of action is GRANTED in part and DENIED in part without prejudice as follows.

18  Plaintiff's excessive force and outrage claims against Officer Cobane are DISMISSED

19  with prejudice.  As to City of Seattle, the Court cannot address the merits of plaintiff's

20  excessive force and outrage claims, in a manner consistent with the doctrines developed

21  under <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978), absent a properly pleaded

22  claim against the officer actually involved in the incident.  The motion for summary

23

ORDER - 4

1  judgment as to plaintiff's excessive force and outrage claims against City of Seattle is

2  therefore DENIED without prejudice.  Plaintiff may file an amended complaint within

3  thirty-five (35) days of the date of this Order.  If plaintiff fails to timely file an amended

4  complaint, the Court will dismiss these claims against City of Seattle with prejudice.  On

5  the other hand, if plaintiff timely files an amended complaint, City of Seattle may renew

6  its motion for summary judgment at an appropriate time.

7  **2.**    **Negligence**

8  Plaintiff has no cognizable claim for negligence.  Plaintiff may not base a claim of

9  negligence on an intentional act, like the use of excessive force or a deliberate effort to

10 "white-wash" or "cover up" police misconduct.  _Nix v. Bauer_, 2007 WL 686506 at *4

11 (W.D. Wash. Mar. 1, 2007); _see Tegman v. Accident & Med. Investigations, Inc._, 150

12 Wn.2d 102, 75 P.3d 497 (2003) ("fault" within the meaning of RCW Chapter 4.22, which

13 encompasses liability for negligence, does not include intentional acts or omissions).

14 Instead, to maintain an action for negligence, plaintiff must first demonstrate that

15 defendants owed him a duty of care.  _Honcoop v. Wash._, 111 Wn.2d 182, 188, 759 P.2d

16 1188 (1988).

17 In Washington, the public duty doctrine defines the four instances under which a

18 governmental entity may be found to owe a statutory or common law duty to a particular

19 member of the public, namely (i) legislative intent, (ii) failure to enforce, (iii) the rescue

20 doctrine, or (iv) a special relationship.  _See Cummins v. Lewis County_, 156 Wn.2d 844,

21 853 & n.7, 133 P.3d 458 (2006).  If one of these four "exceptions" does not apply, then

22 no liability may be imposed for a public officer's negligent conduct, based on the

23

ORDER - 5

1   reasoning that a duty was not owed specifically to the individual plaintiff, as opposed to

2   the public in general.  *Id.* at 852.  Plaintiff does not assert the first three "exceptions."

3   He has not cited any applicable regulatory statute evidencing "a clear legislative intent to

4   identify and protect a particular and circumscribed class of persons," *Honcoop*, 111

5   Wn.2d at 188; he has not identified any statute that defendants were responsible for

6   enforcing and failed to enforce despite actual knowledge of a violation thereof, *see id.* at

7   190 (citing *Bailey v. Town of Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987)); and he

8   has not alleged that defendants assumed a duty to warn or come to plaintiff's aid, *Bailey*,

9   108 Wn.2d at 268.

10         Plaintiff instead relies on the "special relationship" exception, referencing *Beal v.*

11  *City of Seattle*, 134 Wn.2d 769, 954 P.2d 237 (1998), *Torres v. City of Anacortes*, 97 Wn.

12  App. 64, 981 P.2d 891 (1999), and *Noakes v. City of Seattle*, 77 Wn. App. 694, 895 P.2d

13  842 (1995), all of which are distinguishable.  To establish a special relationship creating

14  an actionable duty on the part of a governmental entity, a plaintiff must show:  (i) the

15  plaintiff had direct contact or privity with a public official, thereby setting the plaintiff

16  apart from the general public; (ii) the public official gave "express assurances" to the

17  plaintiff; and (iii) the plaintiff justifiably relied on such express assurances to his or her

18  detriment.  *See Cummins*, 156 Wn.2d at 854.  In both *Beal* and *Noakes*, a 911 dispatcher

19  told the caller that "we'll get the police over there," 134 Wn.2d at 785, or "we'll get

20  somebody down there just as soon as we can," 77 Wn. App. at 696.  In *Torres*, a

21  detective indicated to the plaintiff that he would refer her assault and rape report for a

22  charging decision, but then failed to forward the case to the prosecutor.  97 Wn. App. at

23

ORDER - 6

1  77.  In all three cases, the courts held that whether the statements at issue constituted

2  express assurances on which the plaintiff could have justifiably relied involved issues of

3  material fact precluding summary judgment.

4        In contrast, in <u>Cummins</u>, summary judgment was affirmed in a case involving a

5  911 call during which the caller provided an address and the nature of his medical

6  emergency (heart attack), but then hung up before the dispatcher could obtain additional

7  information or provide any oral response.  156 Wn.2d at 848.  Because the dispatcher had

8  shortly before then fielded a "prank" call from the same pay telephone, and because the

9  dispatcher's attempts to dial the pay telephone, as well as the number associated with the

10 address the caller had provided, were unsuccessful, the dispatcher did not immediately

11 send medical aid, but rather directed a police officer to the location to investigate.  The

12 911 caller, who was the plaintiff's husband, died, and the Washington Supreme Court

13 held that the plaintiff failed to establish a special relationship pursuant to which she could

14 assert a negligence claim against Lewis County.

15       Likewise, in this case, plaintiff has not satisfied the elements of the "special

16 relationship" exception to the public duty doctrine.  Plaintiff's assertion of a special

17 relationship is based solely on a letter dated October 7, 2010, from Sergeant Steve Hirjak,

18 Investigation Section, SPD Office of Professional Accountability ("OPA"), which makes

19 no promises concerning the future conduct of SPD OPA investigators.  Rather, the letter

20 indicates that Sgt. Hirjak's investigation "has been completed" and informs plaintiff

21 about the review process, pursuant to which Sgt. Hirjak's report would be evaluated by

22 his Lieutenant, the Captain of the Investigation Section, and the OPA Director, as well as

23

ORDER - 7

1    by an independent civilian auditor and the commander of the officer at issue.  Ex. S to

2    Response (docket no. 54-20).

3         The letter further tells plaintiff that he "will be notified in writing of the outcome

4    of [his] complaint."  *Id.*  Plaintiff makes no allegation that the review process was not

5    completed in the manner described or that he was not advised in writing of the result.

6    Sgt. Hirjak's letter concludes:

7         *As you can see*, every effort is made to ensure a thorough and impartial
          examination of the facts and information contained in your complaint.
8         Consequently, this is a very lengthy process and we appreciate your
          patience.

9
     *Id.* (emphasis added).  In asserting that this statement constitutes an express assurance,

10
     namely that "'every effort' . . . will be made," Response at 21 (docket no. 54), plaintiff

11
     has simply misquoted it.  The prefatory phrase ("[a]s you can see") makes clear that

12
     Sgt. Hirjak merely believed plaintiff would draw the stated conclusion from the

13
     information provided about the review process.  Nowhere in the letter does Sgt. Hirjak

14
     make an actionable promise, and the letter does not even discuss the promulgation of

15
     "rules, policies, procedures and standards" concerning "misconduct, brutality, harassment

16
     and abuse," which is one of plaintiff's negligence allegations.  Compl. at ¶ 6.5, Ex. 1 to

17
     Verification (docket no. 2-1).  Plaintiff presents no basis for concluding that the Seattle

18
     Police Department or any of its officers owed him a duty specifically and apart from the

19
     duty owed to the public in general.

20
          Moreover, a claim for negligent investigation is not cognizable under common law

21
     in Washington.  *Fondren v. Klickitat County*, 79 Wn. App. 850, 862, 905 P.2d 928

22

23

ORDER - 8

1   (1995).  Washington courts have refused to create a common law cause of action for

2   negligent investigation because such claims "would impair vigorous prosecution and

3   having a chilling effect upon law enforcement."  *Dever v. Fowler*, 63 Wn. App. 35, 45,

4   816 P.2d 1237 (1991).  In an attempt to support his negligent investigation theory,

5   plaintiff cites *Roberson v. Perez*, 123 Wn. App. 320, 96 P.3d 420 (2004), for the

6   proposition that such claim "survived" in that case.  Response at 20 (docket no. 54).

7   Plaintiff, however, has ignored the companion case, *Roberson v. Perez*, 119 Wn. App.

8   928, 83 P.3d 1026 (2004), in which Division III held that the only two plaintiffs as to

9   whom the jury returned a favorable verdict did not have a cause of action for negligent

10  investigation because they were not in the class of persons described in RCW 26.44,

11  relating to investigations concerning child abuse or neglect conducted by the Department

12  of Social and Health Services ("DSHS").

13       As made clear in *Ducote v. DSHS*, 167 Wn.2d 697, 222 P.3d 785 (2009), although

14  a cause of action is implied from RCW 26.44.050, which requires DSHS to investigate

15  allegations of child abuse, such statutory claims are available only to a parent, guardian,

16  or custodian of the child involved; stepparents are not within the class of persons who

17  may sue for negligent investigation pursuant to the statute, and claims of negligent

18  investigation "do not exist under common law in Washington."  *Id.* at 702, 706-07.

19  Plaintiff's reliance on *Roberson* and/or RCW 26.44, which is specific to child abuse

20  investigations and does not apply to investigations of police misconduct, is misplaced.

21       To the extent plaintiff's negligence claim involves the investigation into his own

22  criminal activity, rather than the investigation concerning his complaint about the use of

23

ORDER - 9

1   excessive force, plaintiff's claim is also not actionable.  *See Keates v. City of Vancouver*,

2   73 Wn. App. 257, 869 P.2d 88 (1994).  In *Keates*, Division II held that the plaintiff failed

3   to state a claim for negligence in connection with police interrogations of him concerning

4   his wife's murder, for which a neighbor was eventually tried and convicted.  The *Keates*

5   Court observed that, "[a]s a general rule, law enforcement activities are not reachable in

6   negligence." *Id.* at 267.  Police officers owe no duty to use reasonable care to avoid

7   inadvertent infliction of emotional distress on the subjects of criminal investigation.  *Id.*

8   at 269.  If a plaintiff seeks redress for emotional distress caused by being accused of a

9   crime, the plaintiff must prove the elements of malicious prosecution.  *Id.* at 267.  The

10  malice and lack of probable cause elements of a claim for malicious prosecution "were

11  developed to strike the appropriate balance between the public's right to have a criminal

12  apprehended and the suspect's right to be free from injury." *Id.* at 268.  In this case,

13  plaintiff has asserted a separate claim for malicious prosecution, and he may not use a

14  cause of action for negligence to circumvent the stricter requirements of a malicious

15  prosecution claim.

16      **3.      Unlawful Seizure, False Arrest, False Imprisonment, and
               Malicious Prosecution**

17
        With respect to plaintiff's unlawful seizure claim under § 1983 and his fourth

18  cause of action for false arrest, false imprisonment, and/or malicious prosecution,

19  defendants' motion for summary judgment is DENIED.  To prevail on a claim of

20  unlawful seizure, a plaintiff must show that (i) a defendant seized the plaintiff; (ii) the

21  defendant acted intentionally; and (iii) the seizure was unreasonable.  *See* 9th Cir. Model

22

23

ORDER - 10

1   Instr. 9.18; *see also* *Dubner v. City & County of San Francisco*, 266 F.3d 959, 964 (9th

2   Cir. 2001).  A seizure of a person by arrest without a warrant is reasonable if the arresting

3   officer had probable cause to believe the plaintiff committed or was committing a crime.

4   9th Cir. Model Instr. 9.20; *see also* *Dubner*, 266 F.3d at 964.

5         False arrest and false imprisonment are distinguished by the status of the tortfeasor

6   and the manner in which the restraint of the plaintiff occurred.  *Bender v. City of Seattle*,

7   99 Wn.2d 582, 590, 664 P.2d 492 (1983).  False arrest is committed when a person who

8   has actual or purported legal authority to conduct an arrest unlawfully restrains another.

9   *Id.*  A false imprisonment, however, may transpire "entirely apart from any purported

10   process of law enforcement, as by private individuals acting on their own initiative for

11   their own private purposes without any pretense of legal authority."  *Id.*

12         Malicious prosecution requires proof of the following elements:  (i) a defendant

13   instituted or continued the prosecution alleged to be malicious; (ii) no probable cause

14   existed for the institution or continuation of the prosecution; (iii) the defendant acted with

15   malice; (iv) the proceedings terminated on the merits in favor of the plaintiff; and (v) the

16   plaintiff suffered injury or damage as a result of the prosecution.  *Id.* at 593.  Unlike false

17   arrest and false imprisonment, malicious prosecution does not necessarily involve an

18   interference with personal liberty.  *Id.* at 591.  Moreover, an otherwise lawful arrest does

19   not become unlawful even if prompted by malicious motives.  *Id.*

20         In moving for summary judgment on these various claims, defendants assert that,

21   as a matter of law, probable cause existed for plaintiff's arrest, and that probable cause

22   operates as a complete defense.  *See* *McBride v. Walla Walla County*, 95 Wn. App. 33,

23

ORDER - 11

1  38, 975 P.2d 1029 (1999); _see also_ _Hanson v. City of Snohomish_, 121 Wn.2d 552, 558,

2  852 P.2d 295 (1993).  Probable cause is evaluated with respect to "the totality of

3  circumstances" known to the arresting officer.  _E.g._, _United States v. Smith_, 790 F.2d 789,

4  792 (9th Cir. 1986); _State v. Barron_, 170 Wn. App. 742, 750, 285 P.3d 231 (2012).  The

5  Court's inquiry is whether "a prudent person" in the same situation would have

6  concluded that "a fair probability" existed that the person arrested had committed a

7  crime.  _Smith_, 790 F.2d at 792; _McBride_, 95 Wn. App. at 38 (probable cause exists when

8  "an officer has reasonable grounds to believe a suspect has committed or is committing a

9  crime").

10      In this case, the parties dispute whether plaintiff pushed or otherwise assaulted

11  Officer Cobane and whether plaintiff assaulted a third person during the course of the

12  brawl at issue.  Plaintiff denies that he put his hands on Officer Cobane or punched

13  anyone during the incident.  Rengo Dep. at 42-44, Ex. A to Morehead Decl. (docket

14  no. 37-1).  Plaintiff's sworn deposition testimony raises a genuine issue of material fact

15  that cannot be resolved before trial.

16      Defendants nevertheless assert that, because plaintiff admitted in his deposition

17  that he was "flailing his arms around" and "defending" himself, the Court can resolve the

18  factual dispute in defendants' favor and conclude that officers had probable cause to

19  believe plaintiff was committing a crime.  Defendants contend that the arresting officers

20  could have reasonably, even if mistakenly, believed plaintiff's arm "flailing" provided

21  probable cause to believe plaintiff was committing an assault, and that officers could

22  have reasonably discounted plaintiff's assertions of self-defense.  In making these

23

ORDER - 12

1  arguments, defendants rely on qualified immunity concepts that have been developed in

2  connection with claims under § 1983, but have not been applied by Washington courts to

3  state law claims.  Instead, with respect to the state law claims, what the officers could

4  have reasonably believed during the encounter with plaintiff on April 24, 2010, must

5  await trial.

6          To the extent Officer Cobane seeks qualified immunity with respect to plaintiff's

7  unlawful seizure claim under § 1983, the Court denies this request.  The constitutional

8  right to be free from warrantless arrest without probable cause was "clearly established"

9  at the time of plaintiff's seizure, and whether such constitutional right was violated

10  because no probable cause existed involves genuine issues of material fact.  _See_ _Pearson_

11  _v. Callahan_, 555 U.S. 223, 232 (2009) (describing the two-step qualified immunity

12  inquiry); _Dubner_, 266 F.3d at 964-65 (citing _Larson v. Neimi_, 9 F.3d 1397 (9th Cir. 1993)

13  (holding that Fourth Amendment standards apply to claims of unconstitutional seizures of

14  the person)).

15          Finally, to the extent defendants rely on the independent judgment doctrine as a

16  basis to limit or bar plaintiff's malicious prosecution claim, the Court likewise concludes

17  that summary judgment is inappropriate.  Defendants have cited to _Smiddy v. Varney_, 665

18  F.2d 261 (9th Cir. 1981), _overruled in part on other grounds by_ _Beck v. City of Upland_,

19  527 F.3d 853 (9th Cir. 2008), for the proposition that the filing of a charge or "criminal

20  complaint immunizes investigating officers . . . from damages suffered thereafter because

21  it is presumed that the prosecutor filing the complaint exercised independent judgment in

22  determining that probable cause for an accused's arrest exists at that time."  _Id._ at 266.

23

ORDER - 13

1  As recognized in _Smiddy_, however, the presumption of independent judgment can be

2  rebutted in a variety of ways, including proof of malice on the part of the officers.  _Id._ at

3  267.  The record reflects that Officer Cobane made a profane finger gesture toward

4  plaintiff during an interaction occurring after plaintiff's arrest.  Whether this and/or other

5  evidence establishes malice is a question for the trier-of-fact, and thus, whether Officer

6  Cobane is liable for any damages incurred after plaintiff was charged by the King County

7  Prosecuting Attorney with Assault in the Third Degree cannot be determined by way of

8  summary judgment.

9  **Conclusion**

10      For the foregoing reasons, the Court ORDERS as follows:

11      1.      Defendants' motion for summary judgment, docket no. 36, is GRANTED

12  in part, DENIED in part with prejudice, and DENIED in part without prejudice;

13      2.      Plaintiff's excessive force and outrage claims against Officer Shandy

14  Cobane are DISMISSED with prejudice;

15      3.      Plaintiff's claims of negligence and violation of the Washington State

16  Constitution (second and fifth claims) are DISMISSED with prejudice;

17      4.      With regard to plaintiff's excessive force and outrage claims against City of

18  Seattle, defendants' motion for summary judgment is DENIED without prejudice;

19      5.      Plaintiff may file an amended complaint within thirty-five (35) days of the

20  date of this Order; if plaintiff fails to timely file an amended complaint, the Court will

21  dismiss the excessive force and outrage claims against City of Seattle with prejudice;

22

23

ORDER - 14

1    6.    As to plaintiff's unlawful seizure claim under federal law and his state law

2  claims of false arrest, false imprisonment, and malicious prosecution, defendants' motion

3  for summary judgment is DENIED;

4    7.    The oral argument scheduled for July 10, 2013, as well as the trial date and

5  related deadlines, are STRICKEN;

6    8.    The parties are DIRECTED to file a Joint Status Report, by August 30,

7  2013, indicating what, if any, additional discovery needs to be conducted, whether the

8  parties anticipate filing any further dispositive motions, and when the parties will be

9  prepared for trial; and

10    9.    The Clerk is DIRECTED to send a copy of this Order to all counsel of

11  record.

12    Dated this 28th day of June, 2013.

13

14    _____
      THOMAS S. ZILLY
15    United States District Judge

16

17

18

19

20

21

22

23

ORDER - 15