# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

DAVID RENGO            ,  )
                          )     NO.    C 12-298 TSZ
              Plaintiff,  )
                          )
        v.                )
                          )     SECOND AMENDED
                          )     COMPLAINT
                          )
CAMILO DEPINA and SHANDY  )
COBANE, SEATTLE POLICE OFFICERS, )
JOHN DOE OFFICERS, and CITY OF  )
SEATTLE,                  )
                          )
              Defendants. )
                          )

_____

Plaintiff, DAVID RENGO, by and through his attorney of record, the Law Office of PETER T. CONNICK, for his claims against the above named defendants, alleges as follows:

### I. PARTIES

1.1  Plaintiff DAVID RENGO, at all times material hereto, was a resident of King County, Washington.

1.2  Defendants, Seattle Police Officers CAMILO DEPINA and SHANDY COBANE, at all

SECOND AMENDED COMPLAINT
PAGE - 1 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA 98104
(206) 624-5958
Fax: (206) 343-1374

times material hereto, were residents of King County, Washington, and were duly appointed police officers for the City of Seattle. Seattle Police Officers JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, JOHN DOE #5, JOHN DOE #6, JANE DOE #1, JANE DOE #2 and JANE DOE #3, as seen in In-car Video 6275@2010424013010 (referenced below as Video #6275) and elsewhere, at all times material hereto, were residents of King County, Washington, and were duly appointed police officers for the City of Seattle.

1.3 Former Police Chief JOHN DIAZ, was at all times material hereto, a resident of King County, Washington, and the duly appointed and acting Chief of Police for the City of Seattle, a Washington municipal corporation and subject to the jurisdiction of this Court.

1.4 The SEATTLE POLICE DEPARTMENT is a municipal department organized under the laws of the State of Washington and subject to the jurisdiction of this Court.

1.5 Defendant CITY OF SEATTLE is a municipality organized under the laws of the State of Washington and subject to the jurisdiction of this Court.

## II. JURISDICTION AND VENUE

2.1 Plaintiff incorporates and adopts by reference the allegations contained in Paragraphs 1.1 through 1.5 above.

2.2 Jurisdiction is proper under 28 U.S.C. §1343 and 28 U.S.C.§1331. The §1343 permits federal district courts to hear cases involving the deprivation of civil rights, and §1331 permits federal courts to hear all cases involving a federal question or issue.

SECOND AMENDED COMPLAINT
PAGE - 2 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA 98104
(206) 624-5958
Fax: (206) 343-1374

2.3   Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1)-(2), 42 U.S.C. § 1983, prior court orders dated February 22, 2012 removing the State action to federal court and November 4, 2013 granting leave to amend.

### III.   STATEMENT OF FACTS

3.1   Plaintiff incorporates and adopts by reference the allegations contained in Paragraphs 1.1 through 2.3 above.

3.2   The KING COUNTY PROSECUTOR'S OFFICE charged DAVID RENGO with Assault in the Third Degree (i.e., assaulting a police officer) allegedly occurring as follows:

> That the defendants CHAD D. JORDAN and DAVID ALEXANDER RENGO, and each of them, together with another, in King County, Washington, on or about April 24, 2010, did intentionally assault Detective Daniel Cobane, and that he was a law enforcement officer or other employee of a law enforcement agency who was performing official duties at the time of the assault.

> (*State v. David Rengo*, King Co. #10-1-03621-7 SEA - *Criminal Information & Certification Of Probable Cause*.

3.3   The alleged misconduct occurred the early morning hours of April 24, 2010 in the 2200 block of 1st Avenue, Seattle. It was reported that around 1:30 am Officer SHANDY COBANE and his partner, Detective JONATHAN HUBER, both part of the SPD "pro-active" gang unit, responded to a disturbance outside the Amber Club while cruising Belltown. Officer COBANE exited his vehicle and ran up and grabbed CHAD JORDAN from behind because JORDAN was fighting with an Asian male. According to Officer COBANE'S report, JORDAN struggled free from COBANE'S grasp after DAVID RENGO pushed him from behind. COBANE ran after JORDAN and JORDAN was later found and detained on 1st & Lenora Streets, Seattle. When COBANE walked back to 1st Ave. "a citizen approached (him) and said 'Thats (sic) the other guy that was fighting' pointing at Rengo." Mr. RENGO was detained by COBANE and two bicycle

SECOND AMENDED COMPLAINT
PAGE - 3 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA 98104
(206) 624-5958
Fax: (206) 343-1374

police, cuffed and moved to a patrol car by a swarm of officers with the use of excessive force and physical abuse. After being placed in the patrol car, Mr. RENGO was choked by Officer DEPINA who entered the back seat of the patrol vehicle. The choking can be heard on Video #6275. Fellow officers stood around the patrol car while the choking happened.

3.4   Police did not request or take a statement from Mr. RENGO who complained of police harassment, mistreatment and abuse throughout and after the ordeal - being choked and physically abused while handcuffed by officers and choked by Officer DEPINA. RENGO explained what happened afterwards to KIRO News who interviewed him regarding the police abuse. Mr. RENGO complained that he encountered COBANE in Belltown just after midnight on April 24, 2010. RENGO further explained that someone with another group "sucker punched" him as he left a bar next to the Amber Restaurant and that his friends jumped to his defense. A small melee erupted. Police in black shirts came flying into the melee -- SPD gang unit detective SHANDY COBANE was in the center of it all. RENGO further explained, "The officers immediately grabbed me, threw me on a car, and slammed my head against it. I'm trying to tell them, 'No. I just got attacked. It wasn't me fighting!' "

3.5   DAVID RENGO provided more detail to KIRO News:

DAVID RENGO:   "They say that I pushed him, that he fell and scratched his hand, which is just a lie."

CHRIS HALSNE:   "You don't remember putting your hands on Officer Cobane?" (KIRO News Reporter)

RENGO:   "Absolutely not. I saw when he entered the scene so I know I didn't touch him. I saw him come into the scene and grab Chad and I was in front. Not in a position to even touch him."

SECOND AMENDED COMPLAINT
PAGE - 4 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA  98104
(206) 624-5958
Fax: (206) 343-1374

> ". . . I was laying on my back. They threw me from the street side into the passenger side back of the car. He came around the passenger side, opened the door up and just choked me until I lost, I couldn't, when I started kicking because I was about to pass out, he let me go, I took a breath, then he choked me again."

*Seattle Cop In Stomping Incident Accused Of Abusing Another Suspect*, KIRO November 9, 2010, www.kirotv.com/news/25687185/detail.html.

3.6   According to a SPD internal investigation report, DAVID RENGO came forward and gave a statement in his case about a month after the incident because "he had seen media coverage of the China Harbor (i.e., MARTIN MONETTI) incident involving the named employee and felt that he needed to report his own experience." 11/09/10 *Memo*, Lt. M. KUEHN. Mr. RENGO, however, consistently maintained that the police never asked for nor took a statement from him. This violated police procedure.

3.7   Other police errors and omissions led to the unjust arrest, detention and prosecution of RENGO. The police failed to promulgate proper police procedure and standards for carrying out investigations of abuse and false charging. For example, the police failed to obtain names and phone numbers of witnesses. Detective JONATHAN HUBER told police officers not to give statements. Detective HUBER and Lieutenant CARMEN BEST failed to supervise officers by not requiring Officers COBANE and DEPINA to file a *Use of Force Report*. In addition, Lt. BEST and Sgt, JAMES DYMENT allowed Officer COBANE to file a *Hazard Report* on April 27, 2010 with the General Offense #10-132966 handwritten in and the type written #10-133047 crossed out (the #10-133047 number is associated with Officer DEPINA). Plaintiff asserts that this was done to hide Officer DEPINA'S involvement in the incident.  In addition, the gang unit pursued its own investigation of crimes allegedly committed against the unit - i.e., the alleged assault of Officer COBANE.  Officer DEPINA failed to file a *Use of Force Report* for the choking of RENGO. [*Hazard Reports* under SPD Policy

SECOND AMENDED COMPLAINT
PAGE - 5 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA 98104
(206) 624-5958
Fax: (206) 343-1374

3.065 (*Responding to Threats & Assaults on Officers*) are different from *Use Of Force Reports* under SPD Policy 6.240 XI (*Reporting the Use of Force - when required*)]. The failure to make a *Use Of Force Report* violated police policy and procedure.

3.8   Only certain police officers turned on their lights or used dash cam videos which violated police procedure. Officer AARON DALAN has admitted breaching protocol and violating police policy and procedure when he failed to turn on his dash cam video and when he failed to advise RENGO he was being recorded when transferred to the West Precinct. Sergeant JAMES DYMENT did not perform his role as supervisor and did not follow the *Hazard* and/or *Use of Force* procedures, thereby violating police policy and procedure. Lieutenant CARMEN BEST did not file a report or give a statement, which violated police policy and procedure. Besides not making a *Use Of Force Report*, Officer COBANE had to be held back by another officer at the West Precinct when RENGO was in the holding cell. His movement toward RENGO to fight RENGO was also a violation of police policy and procedure. Officer COBANE also gave RENGO the middle finger while RENGO was in the holding cell which also violated police procedure. Officer COBANE forwarded paperwork to the prosecutor knowing it was false. Likewise, Officer DEPINA failed to make any report or statement of his contact with DAVID RENGO in the patrol car. In fact, Officer COBANE and DEPINA changed a general offense number on a April 27, 2010 *Hazard Report*, an general offense number associated with Officer DEPINA. These acts were intentional and deliberate attempts to conceal reports and evidence that supported RENGO'S complaints of excessive use of force, outrage and civil rights violations. It also violated RENGO'S Constitutional rights under the 4th and 14th amendments to the United States Constitution.

SECOND AMENDED COMPLAINT
PAGE - 6 -

**Law Office of**
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA  98104
(206) 624-5958
Fax: (206) 343-1374

3.9   These acts, as described above, violated SPD policy and procedure. Sergeant STEPHEN HIRJAK, JR. was tasked with the Office of Public Accountability (OPA) investigation of RENGO'S complaints against SPD officers. HIRJAK did not review or disclose Video #6275 (of RENGO'S arrest). King County Detective JEFFREY MUDD did not interview most of the officers involved in the incident, did not attempt to find out if there were any security cameras at the club that RENGO and others were ejected from, and did not attempt to follow-up or talk to any other officers that may have been at the scene. Police officers left RENGO in handcuffs for several hours in the holding cell. Officers deliberately lied about the incident and pursued an unlawful prosecution. This includes an April 27, 2010 *Hazard Report* changing *General Offense* numbers to conceal Officer DEPINA'S involvement in the case and evidence of DEPINA'S dash cam video. The Office of Professional Accountability covered-up police abuse and white-washed the incident to hide the truth. The CITY OF SEATTLE, SPD and the City Attorney's Office also engaged in dishonest, untruthful and deceptive acts by not disclosing Video #6275; this video was only revealed after years of Public Records Act requests from RENGO'S attorney. These acts violated RENGO'S Constitutional rights under the 4th and 14th amendments to the United States Constitution.

3.10 The RENGO choking incident occurred just a week after DEPINA and COBANE were caught on videotape where COBANE was using a racially charged language, then kicking an innocent detainee along Westlake Avenue. It was April 17, 2010 and the detainee was MARTIN MONETTI. Indeed, approximately 13 minutes before the RENGO choking incident, Officer COBANE was videoed by dash cam roughing up a female suspect in the 332 - 5th Ave. North (lower Queen Anne) near Belltown. (1.1 miles from the choking scene according to Mapquest - *see* SPD Officer CHRISTOPHER S. MYER'S Video #5452@ 2010424011317). Officer COBANE is

SECOND AMENDED COMPLAINT
PAGE - 7 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA 98104
(206) 624-5958
Fax: (206) 343-1374

heard swearing at the female detainee "you had a fucking chance to go home but you're being stupid." Officer COBANE encountered 13 minutes later and treated RENGO similarly - i.e., with swearing and abuse.

3.11 The police had a video dash cam of Mr. JORDAN'S arrest which showed him placed against a police car, placed in the patrol car and transported to the jail. Mr. JORDAN protested his guilt throughout the ride as did Mr. RENGO. In Mr. RENGO'S case, the police saved and produced only one of at least two dash-cam videos - i.e., the transport video, not the arrest video. The King County Prosecutor, prompted by the Seattle Police and the Seattle City Attorney, pursued a corrupt prosecution against RENGO. The discovery period for RENGO'S criminal case ran up to his criminal trial (April, 2010 - April, 2011). SPD and the City Attorney's Office of Seattle claimed they did not have that portion of the video of Mr. RENGO'S arrest and choking despite RENGO'S attempts to discover them before the April, 2010 trial. In the partial video SPD produced for criminal trial, Mr. RENGO appears agitated and asks the transporting officer what the charges are against him and for *Miranda* rights. Despite defense requests to produce the dash cam hard-drive, the Seattle Police persisted in their claim that the hard-drive for the vehicle dash cam cannot be "ghost copied" because the hard drive has been over-written so many times. The Seattle City Attorney's Office has claimed the same. This turned out to be a lie when the dash cam video (#6275) was finally produced after multiple PRA requests from Attorney PETER T. CONNICK'S office on or about May 2, 2013. These acts also violated RENGO'S Constitutional rights under the 4th and 14th amendments to the United States Constitution.

3.12 Mr. RENGO denied the charges of felony assault on an officer and sought a jury trial on the bogus criminal charges. Several days of pre-trials ensued (Hon. Judge JOAN DUBUQUE) regarding preservation of evidence and police misconduct which led to

SECOND AMENDED COMPLAINT
PAGE - 8 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA 98104
(206) 624-5958
Fax: (206) 343-1374

dismissal. In dismissing the prosecution the trial court found that RENGO'S arrest and prosecution was the most poorly investigated case she had seen in her 22 years on the bench:

> DuBuque criticized Seattle police for a lack of officer and witness statements on the incident and for failing to follow a department protocol requiring all patrol cars to activate their dashboard cameras when they stopped to investigate the alleged assault, DuBuque said. She also criticized Seattle gang detectives for investigating the case when a member of the gang unit was the alleged victim.

> *Judge dismisses assault case, criticizes Seattle police investigation*, Jennifer Sullivan, Seattle Times, April 26, 2011.

3.13 Despite the lack of reliable evidence, admitted lapses in police procedure, suspicious lack of investigation and reporting, and obvious dishonesty both the Seattle Police Department and its officers COBANE, DEPINA, BEST and others, the KING COUNTY PROSECUTOR'S OFFICE (KCPO) persisted in the prosecution of Mr. RENGO and the alleged felony assault of Officer COBANE. KCPO proceeded to trial which resulted in the further deprivation and violation of Plaintiff's civil rights.  If convicted of felony assault of an officer, DAVID RENGO faced 1 - 3 months in jail, community custody of up to one year, plus fines, costs and other restrictions on his liberty including loss of his right to vote and to carry arms.

3.14 The prosecution of Plaintiff was done in bad faith, and was the result of ill will held by Defendant Officers SHANDY COBANE and CAMILO DEPINA, other SPD officers, the Seattle Police Department, the City of Seattle and King County through its officers.

3.15 The actions of Defendants described above were done for the purpose of depriving Plaintiff of his civil rights and with the knowledge that said actions would result in

SECOND AMENDED COMPLAINT
PAGE - 9 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA  98104
(206) 624-5958
Fax: (206) 343-1374

such deprivations. Such acts violated RENGO'S Constitutional rights under the 4th and 14th amendments to the United States Constitution.

3.16 During the course of the arrest, investigation and prosecution of Plaintiff, as well as the confinement of Plaintiff, Defendants acted in concert with each other, intentionally conducted a sham internal investigation of Plaintiff's allegations of police abuse and misconduct, and controlled the flow of information provided to the King County Prosecutors, much of which was false, unfounded, unreliable and part of a cover-up.

3.17 During all times material hereto, Defendants acted within the course and scope of their employment.

3.18 The deliberate and intentional abuse, harassment, excessive force, and misconduct of Officers COBANE and DEPINA and other officers against Plaintiff as detailed above, as well as the improper manner of investigating the false allegation of felony assault against Officer COBANE, is a settled and accepted practice of the City of Seattle and King County. The *U.S. Justice Department, Civil Rights Division Report* dated December 16, 2011 concluded at page 3: "We find that SPD engages in a pattern of using unnecessary or excessive force, in violation of the Fourth Amendment to the United States Constitution and Section 1411."

3.19 The actions taken by Defendants were in violation of clearly established constitutional protections of which Defendants knew, or with reasonable foresight, should have known. The use of excessive force in the course of an arrest, investigatory stop, detention and continued prosecution violated RENGO'S

SECOND AMENDED COMPLAINT
PAGE - 10 -

**Law Office of**
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA 98104
(206) 624-5958
Fax: (206) 343-1374

Constitutional rights under the 4th, and 14th amendments to the United States Constitution.

3.20  During the course of the investigation of RENGO'S complaints of police abuse and excessive force, false arrest, false imprisonment, malicious prosecution and violation of his civil rights, the SEATTLE POLICE DEPARTMENT and the CITY OF SEATTLE, as well as officials in King County, acquiesced in the wrongful actions of Defendants, and were in effect sanctioning this improper conduct as an official practice and policy of these entities, as the prosecution continued even after notice of the wrongful actions was brought to their attention.

3.21  Plaintiff is still suffering from his unlawful arrest, detention and malicious prosecution for over three years. The Washington State Patrol has computer entries related to the incident and have flagged Mr. RENGO as a danger to police which further aggravates the deprivation of RENGO'S Federal Constitutional rights.

IV. CLAIM FOR DAMAGES

4.1  Plaintiff incorporates and adopts by reference the allegations contained in Paragraphs 1.1 through 3.21 above.

4.2  Claims for damages on behalf of Plaintiff were properly filed with the Defendants. More than sixty (60) days have elapsed since the filing of said claims.

V. CAUSES OF ACTION
A.  FIRST CAUSE OF ACTION - VIOLATIONS OF U.S.C. §1983

5.1  Plaintiff incorporates and adopts by reference the allegations contained in Paragraphs 1.1 through 4.2 above.

SECOND AMENDED COMPLAINT
PAGE - 11 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA  98104
(206) 624-5958
Fax: (206) 343-1374

5.2   Defendant Officers DEPINA, Officer COBANE, and other officers including Officer HUBER, Officer DALON, Sgt. DYMENT, Lt. BEST, Officers JOHN DOE #1 - #6, Officers JANE DOE #1 - #3 and other officers, the SEATTLE POLICE DEPARTMENT, as well as officials of the CITY OF SEATTLE and KING COUNTY, acting under color of law, have deprived Plaintiff of rights guaranteed to him by the United States Constitution, in violation of 42 U.S.C. §1983, and RENGO'S Constitutional rights under the 4th and 14th amendments to the United States Constitution.

5.3   Defendants DEPINA, COBANE and other officers named above, the SEATTLE POLICE DEPARTMENT, as well as officials of the City of Seattle and King County, acting through their officials and under color of law, were in violation of 42 U.S.C. §1983, when they instituted and maintained official policies regarding the use of excessive force, investigations of police abuse, harassment and misconduct which policies deprived Plaintiff of his constitutionally guaranteed rights.

5.4   False arrest and imprisonment involve the following elements: (1) intent to confine, (2) plaintiff was conscious of the confinement, (3) that plaintiff did not consent to the confinement and (4) that the confinement was not otherwise privileged. SPD Officers COBANE, DEPINA and other SPD officers intended to detain, intimidate, harass and confine RENGO without his consent. Such police action was not privileged and violated RENGO'S 4th and 14th amendment rights under the United States

SECOND AMENDED COMPLAINT
PAGE - 12 -

Law Office of
PETER T CONNICK
80 Yesler Way, #320
Seattle, WA 98104
(206) 624-5958
Fax: (206) 343-1374

Constitution.

5.5   The CITY OF SEATTLE, by and through its SEATTLE POLICE DEPARTMENT, falsely arrested, falsely imprisoned, and maliciously prosecuted DAVID RENGO as described above and in violation RENGO'S Constitutional rights under the 4th and 14th amendments to the United States Constitution.

5.5   **Failure to train and supervise**: The CITY OF SEATTLE, by and through its SEATTLE POLICE DEPARTMENT, failed to train and supervise its police officers.  SPD owed a general duty to DAVID RENGO and the public not to use excessive force against citizens, not to unlawfully detain and imprison citizens, not to falsely accuse citizens, not to initiate and continue criminal  prosecutions against citizens, and not to obstruct and cover-up police misconduct. The CITY OF SEATTLE, its employees and SPD officers failed to use reasonable care in the training and/or supervision of its officers to ensure that they were fit for their positions. There was breach of these duties which caused injury to Mr. RENGO.

5.6   This claim for failure to train and supervise in Para. 5.1 through 5.5 is based upon the premise that an employer, the CITY OF SEATTLE and the SEATTLE POLICE DEPARTMENT, should be liable when it places an employee, who it knows or  should have known behaves wrongfully, in a position in which the employee can harm someone else. The CITY OF SEATTLE knew of violations of suspects' civil rights from

SECOND AMENDED COMPLAINT
PAGE - 13 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA  98104
(206) 624-5958
Fax: (206) 343-1374

the China Harbor incident of April 17, 2010 where COBANE and DEPINA were involved in the detention and abuse of a Mexican suspect (MARTIN MONETTI)   and years of complaints of excessive force by SPD. The Department of Justice   in   its December 16, 2011 *DOJ Report* highlighted the fact that SPD failed to adequately train and supervise police officers. In this case, as in other cases, this included gang unit supervisors instructing regular officers not to write reports and deliberately lying through both omission and commission in reports. For example, on this last allegation, Det. KUEHN alleged in an October 7, 2010 OPA  report (Office of Public Accountability) that Rengo smeared feces on his holding cell window. This was a lie.

5.7   "[A] municipality may be liable if it had notice of prior misbehavior by its officers and failed to take remedial steps amounting to deliberate   indifference   to   the offensive acts." *Patzner v. Burkett*, 779 F.2d 1363, 1367 (CA8 1985);  see also, *e.g.,* *Fiacco v. Rensselaer*, 783 F.2d 319, 327 (CA2 1986) (multiple incidents required for finding of deliberate indifference); ("[A] municipality may be liable if it   had  notice of prior misbehavior by its officers and failed to take remedial steps amounting to deliberate indifference to the offensive acts"); *Languirand v. Hayden*, 717 F.2d 220, 227-228 (CA5 1983) (municipal liability for failure to train requires "evidence at least of a    pattern of similar incidents in which citizens were injured or endangered"); *Wellington v. Daniels*, 717 F.2d 932, 936 (CA4 1983) ("[A] failure to supervise gives

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA  98104
(206) 624-5958
Fax: (206) 343-1374

rise to § 1983 liability, however, only in those situations where there is a history of wide-spread abuse. Only then may knowledge be imputed to the supervisory personnel").

5.9   In its 12/16/11 report (pp. 19-20), the DOJ noted the inadequacy of SPD's training and investigation of use of force. The examination found "sergeants (who) do not have a clear sense of their responsibilities as investigators of the use of force. . . which result(ed) in unconstitutional uses of force by inadequately supervised officers." Sergeants are first-line supervisors who respond to use of force incidents and oversee their officers' activities on a daily basis. The DOJ report admonished SPD by directing that "sergeant training should not be limited to use of force investigations. SPD sergeants should receive general training about how to conduct thorough and effective investigations, as we have also seen deficiencies   in   general OPA line investigations. . . as well as in investigations of biased policing allegations." 12/16/11 *DOJ Report*, p.19. The DOJ report also noted that "The importance of training sergeant supervisors to properly investigate use of force   incidents   cannot be overstated." *DOJ Report*, p.19.   These deficiencies in effective use of force investigations is the same pattern and practice seen in RENGO'S case.

5.10   **Inadequate Oversight and Review of Use of Force**.   The SPD's *Use of Force* policy requires that use of force packets be forwarded through the chain of command,

SECOND AMENDED COMPLAINT
PAGE - 15 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA  98104
(206) 624-5958
Fax: (206) 343-1374

typically from a sergeant, to the watch Lieutenant, to the Captain of the Precinct, and to the employee's Bureau Commander, typically the Assistant Chief over Patrol Operations. SPD DP&P 6.240.XII.B.12. The DOJ found that this process "was a mere formality, almost a rubber stamp of the first-line supervisor's conclusion". . . . and that there was "little evidence that management and Department executives conduct a meaningful review of the use of force." 12/16/11 *DOJ Report*, p. 19. In RENGO'S case, neither Lt. CARMEN BEST and/or Sgt. JAMES DYMENT did any meaningful review of the case. An OPD review by Lt. MARK KUEHN was the typical rubber-stamping, white-wash noted in the 12/16/11 *DOJ Report*.

5.11 The misconduct and excessive use of force against RENGO is part of a broader pattern, custom and practice of mistreatment by SPD of suspects. In the 12/16/11 *DOJ Report*, the     Department of Justice attaches an "Appendix A", which shows how many times each individual SPD officer used force between January 1, 2009 and April 4, 2011. The 600+ officers are placed in random order. The chart shows that during this period, 11 officers used force 15 or more times, and 31 officers used force 10 or more times. Of all officers who used force 10 or more times, only  one  officer received administrative  review of any kind. As noted by the DOJ, "This  statistic indicates that there is minimal supervisory oversight over officers who frequently use force." The DOJ also noted:

SECOND AMENDED COMPLAINT
PAGE - 16 -

**Law Office of**
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA 98104
(206) 624-5958
Fax: (206) 343-1374

Effective supervisory techniques should focus on the relatively small number of officers who use force frequently to better understand why they use force, when they use force, and what training or other remedies, if any, are needed to minimize the use of force. The supervisory technique of collecting data and examining the activity of particularly active officers should be extended to examining the activity of officers who may be outliers in other aspects of policing, including, but not limited to pedestrian stops. Extending supervision and data collection in this way is important to reduce the number of excessive force incidents because the officers who are outliers in use of force are often the same officers who are outliers in the context of seizures such as pedestrian stops.

12/16/11 *DOJ Report*, p. 19.

This lack of "extended examination" of officer misconduct was part of a pattern, practice and custom in RENGO'S case and led to a deprivation of his constitutional rights under the 4th and 14th amendments.

5.12 The City of Seattle has been aware of or should have been aware of the lack of supervision and investigation of use of force complaints for years. "[A] municipality may be liable if it had notice of prior misbehavior by its officers  and failed to take remedial steps amounting to deliberate indifference to the offensive acts". See, *e.g.*, *Fiacco v. Rensselaer*, 783 F.2d 319, 327 (CA2 1986) (multiple incidents required for finding of deliberate indifference); *Patzner v. Burkett*, 779 F.2d 1363, 1367 (CA8 1985) ("[A] municipality may be liable if it had notice of prior misbehavior by its officers and failed to take remedial steps amounting to deliberate indifference to the offensive acts"); *Languirand v. Hayden*, 717 F.2d 220, 227-228 (CA5 1983)

SECOND AMENDED COMPLAINT
PAGE - 17 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA  98104
(206) 624-5958
Fax: (206) 343-1374

(municipal liability for failure to train requires "evidence at least of a pattern of similar incidents in which citizens were injured or endangered"); *Wellington v. Daniels,* 717 F.2d 932, 936 (CA4 1983) ("[A] failure to supervise gives rise to §1983 liability, however, only in those situations where there is a history of wide-spread abuse. Only then may knowledge be imputed to the supervisory personnel").

5.13    A recent *Second Semiannual Report* from The Seattle Police Monitor dated November 15, 2013, commented on number of findings involving lack of training and supervision within the department which shows SPD's knowledge of the problems and resistance to correction. First, with respect to failing to activate dash cam videos, the problem is systemic:

Pages 7 - 8:  The Monitoring Team's discoveries have been alarming. Although the SPD keeps data on uses of force, it is incomplete, lacks necessary detail, and is frequently incorrect. The current data management system, the Administrative Investigations Management system ("AIM"), is unacceptably antiquated, impractical, and onerous to use. It lags far behind other law enforcement agencies and best practices. At the time of this report, SPD simply lacks any reliable means of knowing or analyzing when and how its officers are using force.

Page 10:     First, use of force data is frequently incomplete in the AIM program because the underlying force reports themselves are incomplete. That is, officers frequently omit critical descriptive data on the form on which basic information about the use of force is recorded. Much data is missing, likely because it was never reflected on use of force forms in the first instance.

Page 14:     During the last year, the Monitoring Team learned of an incident in which a substantial number of patrol vehicles responded to the scene of an officer-involved shooting. Incredibly, none of the officers activated their in-car

SECOND AMENDED COMPLAINT
PAGE - 18 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA  98104
(206) 624-5958
Fax: (206) 343-1374

video or audio systems during the key moments of the incident. Purported excuses were made, including shift changes, the emergent nature of the situation, and the time necessary to log on. The presence of a command officer, and plenty of planning time, should have allowed for compliance with the SPD's ICV policy--which requires the use of recording equipment when responding to an emergency. Whatever the reasons might have been, no video was recorded. During the course of several other hearings by SPD's review boards, it became clear that the failure to log on to and activate the ICV is not an uncommon occurrence and is never an occasion for discipline.

The incident described above is exactly the kind of incident that should have been immediately referred to OPA. for administrative review because there might have been misconduct on the part of officers who failed to follow existing policy on activating cameras.

Page 15:    The oft-cited officer explanations—that equipment malfunctioned, that the incident was too fast-moving to allow ICV activation, that log-in is cumbersome, that the "out-of-range" warning for the body rule is troublesome - are routinely accepted by command staff and management without further inquiry. . . .
No effort is underway—at least one disclosed to the Monitoring Team to establish a process to eliminate all viable excuses so that officers whose audio or video systems are not operational during a use of force incident can be held accountable for violations of the ICY policy where appropriate.

5.14 With respect to the lack of supervision, the November 15, 2013 *Second Semiannual Report* was just as harsh:

Page 16:  Supervisors must ensure that their reports know that the lack of video or audio of an incident will not be automatically excused on the grounds that the equipment was not working, too cumbersome to employ, or the like. The active and passive resistance to the implementation of ICV technology must end.

Page 26:  The UOFRB (Use Of Force Review Board) has deemed force packets to be incomplete when they failed to find relevant video, inadequately described a use of force (e.g., including in a narrative that the officer "took the suspect to the ground" rather than providing a more detailed description of *how* the officer took the suspect to the ground), and failed to identify and interview witnesses seen in a

SECOND AMENDED COMPLAINT
PAGE - 19 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA 98104
(206) 624-5958
Fax: (206) 343-1374

video. The Captain may also return incomplete packets to the Precinct before the Board receives them. Problematically, however, beyond sending an incomplete packet back for further information, the Monitoring Team knows of no consequences to the Chain of Command for incomplete packets. Recently, the Captains and Watch Commanders of all Precincts have been reminded of deficiencies being seen regularly in their reviews of I:0F packets. It will be expected that these deficiencies will be promptly reduced.

Likewise, on far too many occasions, packets are not completed in a timely fashion. Pursuant to current SPD policy, UOF reports are supposed to be completed within 72 hours of a use of force incident, and reviewed by the Chain of Command in a similar time frame! When reports are not completed within this time frame, the delay is typically excused because it purportedly related to "requests for additional information and review of the available WV's" or other similar justifications. These excuses do not explain delays in submission that have lasted in excess of 30 days. The unexcused delays and lack of specificity in explaining the delay are entirely unacceptable.

. . . The officer's Precinct Chain of Command tacitly accepted the continued violation of SPD policy. The Board's repeated reference to the untimeliness of these reports went unheeded by the presiding Captain and Assistant Chief.

5.15   SPD review boards on use of force deliberately subvert neutral and fair review of

complaints as noted in the Monitor's *Second Semiannual Report*:

Page 34: The FRB's (Firearms Review Board) The FRB's current deficiencies go beyond an inability to embrace a broad inquiry that is critical and rigorous. Too often, the examination of the involved officer involves suggestive or leading questions. Breaks between multiple officers' testimony have permitted Board members or observers to potentially communicate the substance of questions being posed to, or testimony being provided by, preceding officers to witnesses that have yet to testify. Likewise, the manner and means by which the officer's written statements are obtained does not lead to an appearance of independent, uncoached, unrehearsed testimony, as officers are not consistently sequestered prior providing statements.   Such inconsistencies permit the possibility or, at a minimum, the appearance of collusive, biased, or inaccurate testimony.

SECOND AMENDED COMPLAINT
PAGE - 20 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA 98104
(206) 624-5958
Fax: (206) 343-1374

5.16  The actions of Defendants were intentional and were done with reckless disregard of Plaintiff's federally protected rights. Certainly there has been notice to the City of Seattle and SPD of prior misbehavior by its officers and failed to take remedial steps amounting to deliberate indifference to the offensive acts. There is also evidence of a practice, pattern and custom of similar incidents in which citizens were injured or endangered.

5.14  Plaintiff is entitled to recover compensatory, as well as punitive damages, and attorneys fees and costs of this suit against the individuals named herein as Defendants and to recover compensatory damages, attorneys fees and costs of suit against the City of Seattle, and Officers DEPINA and COBANE individually as named as Defendants herein.

B. SECOND CAUSE OF ACTION

MALICIOUS PROSECUTION BY OFFICERS DEPINA, COBANE, OTHER SPD OFFICERS AND THE SEATTLE POLICE DEPARTMENT

6.1  Plaintiff incorporates and adopts by reference the allegations contained in Paragraphs 1.1 through 5.14  above.

6.2  DAVID RENGO asserts that his April 24, 2010 arrest was an unlawful seizure in violation of the Fourth Amendment and the concealment of material evidence, falsification of evidence, and that the fabrication of charges against him violated the

SECOND AMENDED COMPLAINT
PAGE - 21 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA  98104
(206) 624-5958
Fax: (206) 343-1374

Fourteenth Amendment's guarantee of due process.

6.3   "Malicious prosecution consists of initiating or procuring the arrest and prosecution of another under lawful process, but from malicious motives and without probable cause . . ." *Sullivan v. County of Los Angeles*, 12 Cal.3d 710, 720, 117 Cal.Rptr. 241, 527 P.2d 865 (1974). Under 42 U.S.C. §1983, a "criminal defendant may maintain a malicious prosecution claim not only against prosecutors but also against others—including police officers and investigators - who wrongfully caused his prosecution." *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir.2011); *see Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir.2004). To maintain a §1983 action for malicious prosecution, a "plaintiff must show that the defendants prosecuted (him) with malice and without probable cause, and that they did so for the purpose of denying (him) a specific constitutional right." *Smith*, 640 F.3d at 938; *Awabdy*, 368 F.3d at 1066.

6.4   Other courts have held that police officers may be liable under §1983 for prosecution without probable cause if they fail to disclose exculpatory evidence to prosecutors, make false or misleading reports to the prosecutor, omit material information from the reports, or otherwise interfere with the prosecutor's ability to exercise independent judgment. *See Sanders v. English*, 950 F.2d 1152, 1162–1164 (5th Cir.1992) (deliberate concealment or deliberate failure to disclose patently exculpatory evidence to prosecutor exposes officer to liability for malicious

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA 98104
(206) 624-5958
Fax: (206) 343-1374

prosecution under § 1983); *Barlow v. Ground*, 943 F.2d 1132, 1136–1137 (9th Cir.1991), *cert. denied*, 505 U.S. 1206, 112 S.Ct. 2995, 120 L.Ed.2d 872 (1992) (officer may be liable under §1983 where his omission of crucial information prevented prosecutor from making independent judgment); *Robinson v. Maruffi*, 895 F.2d 649, 655 (10th Cir.1990) (officer may be liable under §1983 for malicious prosecution if he purposefully concealed and misrepresented material facts which may have influenced prosecutor's decision to prosecute); *McMillian v. Johnson*, 878 F.Supp. 1473, 1502–1503 (M.D.Ala.1995) (police officers have a clearly established duty to turn exculpatory evidence over to the prosecutor for disclosure to the defendant); *Rhodes v. Smithers*, 939 F.Supp. 1256, 1273–1274 (S.D.W.Va.1995) (citing *Mahoney v. Kesery*, 976 F.2d 1054, 1061 (7th Cir.1992)) (officer may be liable under § 1983 if he procures a prosecution by lying to the prosecutor). The Third Circuit has stated:

> Where a police officer causes an arrest to be made pursuant to a warrant which he obtained on the basis of statements he knew to be false or on the basis of statements he makes in reckless disregard of the truth, a plaintiff may recover damages under section 1983 for "unreasonable seizure" of his person in violation of the Fourth Amendment.

*Lippay v. Christos*, 996 F.2d 1490, 1502 (3rd Cir.1993); citing, *Forster v. County of Santa Barbara*, 896 F.2d 1146, 1148 (9th Cir.1990) (per curiam) (adopting the standard of determining the validity of search warrants enunciated by *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), in permitting

SECOND AMENDED COMPLAINT
PAGE - 23 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA 98104
(206) 624-5958
Fax: (206) 343-1374

§1983 plaintiffs to recover for violations of the Fourth Amendment); see also *Haupt v. Dillard,* 794 F.Supp. 1480, 1490 (D.Nev.1992) (same).

6.5   In Mr. RENGO'S case, Officer DEPINA, individually and in concert with Officer COBANE and other officers, failed to make complete and submit a *Use Of Force Report,* failed to complete or file an officer report or statement of his contact with DAVID RENGO April 24, 2010, changed a general offense number associated with Officer COBANE on an April 27, 2010 *Hazard Report* that associated *Depina* with the incident, and acted in concert with other officers to hid his contact with RENGO April 24, 2010. Such acts were obstructive and led to the City's/ SPD's denial of Video #6275 - i.e., the DEPINA dash cam video. Video #6275 has audio where RENGO, while handcuffed in the back seat of the patrol car, is heard yelling in the back seat of the patrol car being choked. Other officers are standing beside, around and in back of the patrol vehicle during the RENGO choking within the sight and sound of the choking. Officer DEPINA, individually and with other officers, failed to disclose exculpatory evidence to the KING COUNTY PROSECUTOR'S OFFICE, omitted reports to the prosecutor thereby creating a false prosecution, omitted material information from reports to support a bogus prosecution, and otherwise interfered with the prosecutor's ability to exercise independent judgment thereby leading to a fabricated prosecution.

6.6   Plaintiffs are entitled to recover compensatory, as well as punitive damages, and

SECOND AMENDED COMPLAINT
PAGE - 24 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA 98104
(206) 624-5958
Fax: (206) 343-1374

attorneys fees and costs of this suit against the individuals named herein as Defendants and to recover compensatory damages, attorneys fees and costs of suit against the City of Seattle, and Officers DEPINA and COBANE individually as named as Defendants herein.

### C.   THIRD CAUSE OF ACTION
OUTRAGE

7.1   Plaintiff incorporates and adopts by reference the allegations contained in Paragraphs 1.1 through 6.4 above.

7.2   The above described actions of Defendants, the CITY OF SEATTLE, and the SEATTLE POLICE DEPARTMENT, and King County were extreme, outrageous and beyond all bounds of decency. Defendants' actions were reckless and/or intentional, and were done for the    purpose of causing Plaintiff severe emotional distress.

7.3   Plaintiff is entitled to recover compensatory, as well as punitive damages, and attorneys fees and costs of this suit against the individuals named herein as Defendants and to recover compensatory damages, attorneys fees and costs of suit against the CITY OF SEATTLE, and Officers DEPINA and COBANE individually as named as Defendants herein.

### VI. DAMAGES

8.1   Plaintiff incorporates and adopts by reference the allegations contained in Paragraphs 1.1 through 7.3  above.

SECOND AMENDED COMPLAINT
PAGE - 25 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA  98104
(206) 624-5958
Fax: (206) 343-1374

8.2   As a direct and proximate result of the actions of the Defendants named herein, and each of them, the Plaintiff has sustained both economic and non-economic damages, to be proven at the time of trial, and which include, but are not limited to physical injuries, emotional and mental distress, humiliation, embarrassment, reduction in the ability to enjoy life, pain and suffering, out of pocket expenses, including attorneys fees and costs, and lost wages.

## VII.   ATTORNEY'S FEES

9.1   Plaintiff is entitled to recovery of attorney's fees herein. Plaintiffs allege that a fair and reasonable fee to pay to Plaintiff's attorney in these proceedings is $200.00 per hour for all attorney's time expended, $80.00 per hour for paralegal's time expended, $40.00 for secretarial services, plus out of pocket costs and expenses.

## VIII.   PRAYER FOR RELIEF

WHEREFORE,  plaintiff prays for judgment against defendants, and each of them, as follows:

- For recovery of all economic and non-economic damages in an amount to be proven at trial;
- For recovery of exemplary and punitive damages;
- For recovery of all reasonable attorney's fees and costs incurred herein;
- For recovery of interest on each item of damages from the date incurred until paid at a maximum statutory rate; and
- For such other relief as this Court deems just and equitable.

SECOND AMENDED COMPLAINT
PAGE - 26 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA  98104
(206) 624-5958
Fax: (206) 343-1374

DATED this ___4th___ day of ___December, 2013___.

_____
PETER CONNICK - WSBA # 12560
Attorney for Defendant

STATE OF WASHINGTON    )
                            )    VERIFICATON OF COMPLAINT
KING COUNTY             )

DAVID RENGO, being first duly sworn upon oath deposes and states, that I am the above-referenced complainant whose name appears in this *Second Amended Complaint* and who submitted this *Second Amended Complaint*; I know the contents thereof; and the matters set forth in this *Second Amended Complaint* are true, correct and made to my best knowledge and belief. I swear under penalty of perjury under the laws of the State of Washington that the above statements are true and correct.

DATED this __4th__ day of December, 2013.

_____
DAVID RENGO
Complainant

SECOND AMENDED COMPLAINT
PAGE - 27 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA 98104
(206) 624-5958
Fax: (206) 343-1374

**CERTIFICATE OF SERVICE**

I certify that on the __10th__ day of December 2013, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record:

Attorneys for Defendants:     City of Seattle, SPD Officers Shandy Cobane and Camilo Depina:

Brian G. Maxey, brian.maxey@seattle.gov
Sarah K. Morehead, sarah.morehead@seattle.gov

DATED this __10th__ day of December, 2013, at Seattle, King County, Washington.

_____
MARCIA SMITH, Paralegal

SECOND AMENDED COMPLAINT
PAGE - 28 -

Law Office of
**PETER T CONNICK**
80 Yesler Way, #320
Seattle, WA  98104
(206) 624-5958
Fax: (206) 343-1374